UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FUNDS IN THE AMOUNT OF | ) |
| APPROXIMATELY $5,194,292.77 | ) |
| SEIZED FROM BANK OF AMERICA | ) |
| ACCOUNT IN THE NAME OF STATE | ) |
| SCIENTIFIC LAB LLC ACCOUNT | ) |
| NUMBER XXXXXXX4827; | ) |
| | ) |
| Defendant. | ) |

**<u>VERIFIED COMPLAINT FOR FORFEITURE</u>**

The UNITED STATES OF AMERICA, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant property, alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**<u>Nature of the Action</u>**

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This complaint is verified by the attached Verification of Ellen S. Diamond, Federal Bureau of Investigation ("FBI") Special Agent ("SA Diamond"), which is fully incorporated herein.

## The Defendant *in rem*

4. The defendant *in rem* consists of the following property:

> (a) Funds in the amount of approximately $5,194,292.77 seized from Bank of America account in the name of State Scientific Lab LLC account number XXXXXXX4827 ("**Defendant Account**").

5. The defendant property was seized on or about June 21, 2023.

6. The defendant property is currently in the custody of the United States Marshals Service.

## Jurisdiction and Venue

7. This Court has jurisdiction over an action commenced by the United States under Title 28, United States Code, Section 1345, and over an action for forfeiture under Title 28, United States Code, Section 1355(a).

8. This Court has *in rem* jurisdiction over the defendant property pursuant to Title 28, United States Code, Section 1355(b)(1)(A), because acts giving rise to this action occurred within the Northern District of Illinois.

9. Venue is proper in the Northern District of Illinois pursuant to Title 28, United States Code, Section 1395(b)(1)(A) because acts giving rise to this action occurred in this district.

**Statutory Basis for Forfeiture**

10. The defendant property is subject to forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, or any property traceable to such property. The defendant property is also subject to forfeit pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as property that constitutes and is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341, 1343, 1347, 1349, or 1957. Finally, the defendant property is further subject to forfeiture pursuant to Title 18, United States Code, Section 984, which permits the Government in a civil forfeiture action to forfeit fungible property, such as funds deposited in a bank account, without directly tracing the property if the funds are seized from the same account as the property involved in the offense, provided that the action is commenced within one year from the date of the offense.

**Specific Allegations**

**I. Background**

    **A. State Scientific Lab LLC**

11. According to information provided by the Illinois Secretary of State, State Scientific Lab LLC ("State Scientific") was incorporated on August 10, 2021. In its annual report for 2022, Kyaw Thu Ya ("Ya") was identified as the Registered Agent and Manager of State Scientific. As of February 29, 2024, according to Illinois

Secretary of State records, Ya was still listed as the Registered Agent and Manager of State Scientific.

12. According to the Medicare Provider Enrollment, Chain, and Ownership System ("PECOS"), State Scientific is a registered provider with Medicare. Fahad Gaffoor is listed as the "Authorized Official," "5% or Greater Direct/Indirect Owner," and "Managing Employee." As part of PECOS, there is an electronic funds transfer ("EFT") agreement between Medicare and State Scientific. According to the EFT agreement, Medicare monies for claim reimbursement by State Scientific were to be electronically deposited into **Defendant Account** starting approximately on or about April 21, 2022.

    **B.**    **Medicare Program**

13. Medicare is a federal health benefit program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services. Medicare is funded through individual payroll taxes, other taxes, and user fees. Medicare helps pay for the reasonable and necessary medical services for people aged 65 and older and some persons under 65 with certain illness and/or disabilities. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

14. Each Medicare beneficiary is identified with a unique beneficiary identifier number ("BIN"). These BINs are used, among other ways, to determine a beneficiary's eligibility for Medicare benefits, and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services.

15. Medicare, as well as private health care benefit programs are "health care benefit programs" as defined by Title 18, United States Code, Section 24(b), that is, a "public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual…" 18 U.S.C. § 24(b).

16. Medical providers and suppliers must obtain a National Provider Identifier ("NPI") before enrolling in Medicare. Health care providers seeking to become a Medicare provider must submit enrollment documentation to Medicare, which includes, among other things, contact information for the provider.

17. Every claim submitted by, or on behalf of, a physician or health care provider, includes an agreement by the provider to abide by Medicare's rules and regulations. As a condition of payment Medicare requires providers to certify all information on the claim is true, correct, and complete. Additionally, the provider certifies the service was rendered personally by the provider or under his/her direct supervision and incident to the provider's care and that the service was medically necessary for the health and/or well-being of the patient. Health care suppliers, like State Scientific, are paid by Medicare through the submission of claims. All Medicare providers are required to submit claims electronically. Those claims are processed through Baltimore, Maryland, and therefore they travel in interstate commerce. Medicare reimburses claims electronically, as well, and payments for Medicare Part A services in Illinois are issued from National Government Services, a Medicare Administrative Contractor headquartered in Indianapolis, Indiana. Payments are made into a provider's bank account through an electronic funds transfer. Providers

are also required to maintain all documents that substantiate Medicare claims for at least six years.

18. State Scientific was actively enrolled with Medicare until June 28, 2023, when it was suspended from the Program. Therefore, at all times relevant to this complaint, State Scientific was bound by the laws, rules, and regulations that govern Medicare.

### C. Over-the-Counter ("OTC") COVID-19 Test Kits

19. In April 2022, the federal government announced that Medicare beneficiaries could receive up to eight OTC COVID-19 tests per calendar month from participating pharmacies and health care providers for the duration of the COVID-19 public health emergency ("PHE") at no cost to beneficiaries. The PHE ended on May 11, 2023, at which point Medicare no longer paid for beneficiaries to receive eight OTC COVID-19 tests per month.

20. To receive reimbursement from Medicare for the OTC COVID-19 tests, providers were directed to bill Medicare using Healthcare Common Procedure Code System ("HCPCS") code K1034. CMS's guidance to providers billing for these OTC COVID-19 tests was to "only give patients the tests when they request them." Additionally, CMS instructed providers to "keep good documentation. We may ask to see documentation showing a patients' request for tests. If you don't provide the documentation, we could recoup payment and may take other administrative actions."

**II.     Facts Establishing Basis for Forfeiture**

21.     State Scientific obtained the funds in **Defendant Account** from the Medicare program by making fraudulent reimbursement claims to Medicare for the purported provision of OTC COVID-19 tests to (1) beneficiaries who never received the OTC COVID-19 tests and (2) beneficiaries who did not request the tests or agree to or approve the delivery of tests to their home.

   **A.     Analysis of Medicare Claims Data**

22.     First, an analysis of State Scientific's Medicare claims data shows a number of anomalies that are uncommon and indicative of fraud. Despite obtaining initial approval in PECOS in April 2022, State Scientific did not begin billing to Medicare until more than a year later, when it began billing for large numbers of OTC COVID-19 test kits under HCPCS code K1034.[1] Between May 2, 2023 and June 8, 2023, a period of less than six weeks, State Scientific billed approximately $16,918,000 to Medicare and was paid approximately $7,696,872.96. The billing was submitted utilizing State Scientific's national provider identification (NPI) number. Those claims account for purported OTC COVID-19 test kit deliveries to approximately 84,589 Medicare beneficiaries.

23.     In addition to the sudden, unprecedented, and extreme levels of billing over a short period of time, the claims analysis also reveals that the overwhelming majority of billing occurred on a limited number of dates. In particular, over 99% of State Scientific's billed claims were submitted for reimbursement on just four

---

[1] Ya became the Registered Agent of State Scientific on April 1, 2023, according to the Illinois Secretary of State.

7

separate dates. This is demonstrated in the summary chart below, showing all of the dates for which State Scientific submitted claims. State Scientific's billing to Medicare ceased completely on June 8, 2023.

| Claim Submission | No. of Services on Submission Date | Qty. of OTC Tests Billed | Amt. Provider Billed Medicare | Amt. Medicare Paid Provider |
|---|---|---|---|---|
| 05/02/2023 | 21,339 | 170,712 | $4,267,800 | $1,846,696.32 |
| 05/03/2023 | 22,733 | 181,864 | $4,546,600 | $2,102,499.84 |
| 05/05/2023 | 9,681 | 77,448 | $1,936,200 | $897,617.28 |
| 05/08/2023 | 30,691 | 245,528 | $6,138,200 | $2,850,059.52 |
| 05/16/2023 | 57 | 456 | $11,400 | - |
| 05/17/2023 | 6 | 48 | $1,200 | - |
| 05/18/2023 | 32 | 256 | $6,400 | - |
| 05/19/2023 | 9 | 72 | $1,800 | - |
| 05/22/2023 | 2 | 16 | $400 | - |
| 05/23/2023 | 8 | 64 | $1,600 | - |
| 05/24/2023 | 2 | 16 | $400 | - |
| 05/26/2023 | 2 | 16 | $400 | - |
| 05/30/2023 | 2 | 16 | $400 | - |
| 05/31/2023 | 1 | 8 | $200 | - |
| 06/01/2023 | 4 | 32 | $800 | - |
| 06/02/2023 | 4 | 32 | $800 | - |
| 06/05/2023 | 1 | 8 | $200 | - |
| 06/06/2023 | 5 | 40 | $1,000 | - |
| 06/07/2023 | 5 | 40 | $1,000 | - |
| 06/08/2023 | 6 | 48 | $1,200 | - |
| Total | 84,590 | 676,712 | $16,918,000 | $7,696,872.96 |

24. All reimbursements of paid claims were electronically deposited into **Defendant Account**. Medicare paid approximately $7,696,872.96 into **Defendant Account** between May 4, 2023 and May 24, 2023.

B. **State Scientific Site Visit**

25. On June 5, 2023, law enforcement conducted a site visit at State Scientific, which, according to the NPI Registry, was located at 1550 N. Mannheim Rd., Suite C, Stone Park, Illinois. At that address, the agent observed a sign labeled

8

"Stone Park Plaza" which further identified four businesses, including State Scientific. However, observation of Suite C (identified with the address marker "1550-C" over the entry door) revealed the business to be a restaurant. Immediately next to the restaurant was a vacant area with a sign that read, "For Rent." Other than the "Stone Park Plaza" sign, there did not appear to be any presence of State Scientific.

### C. Medicare Beneficiary Interviews

26. Between approximately May 5, 2023, and February 20, 2024, Medicare received approximately 4,806 complaints from Medicare beneficiaries regarding State Scientific. Of those, approximately 2,162 were categorized as the Medicare beneficiary receiving no services from State Scientific. Investigators interviewed numerous beneficiaries, and those interviews are summarized below:

#### i. Medicare Beneficiary S.D.

27. On June 1, 2023, investigators interviewed Medicare beneficiary S.D. S.D. did not request or receive any OTC COVID-19 test kits in the mail. Despite that fact, S.D. noticed four separate requests for payment for OTC COVID-19 tests kits on his/her Medicare Explanation of Benefits. The purported providers of the OTC COVID-19 test kits, according to the Explanation of Benefits information were State Scientific and three other laboratory companies. In each instance, the request for reimbursement was for CPT code K1034 for eight (8) test kits. In each instance, the companies were reimbursed by Medicare to the biller for $94.08.

#### ii. Medicare Beneficiary D.B.

28. On June 2, 2023, investigators interviewed Medicare beneficiary D.B.

9

D.B did not request or receive any OTC COVID-19 test kits in the mail, and did not respond to any solicitations for OTC COVID-19 test kits received via telephone, e-mail, or text. According to Medicare data, Medicare was billed for OTC COVID-19 kits purportedly sent to D.B. by State Scientific and another laboratory company. D.B. did not recognize the name of either company that purportedly provided the test kits.

### iii. Medicare Beneficiary S.H.

29. On June 15, 2023, investigators interviewed Medicare beneficiary S.H. On approximately April 26, 2023, S.H. received a package in the mail containing four OTC COVID-19 test kits. The shipping address on the package did not identify the package sender as State Scientific. S.H. had not requested any OTC COVID-19 tests. According to Medicare data, Medicare was billed for OTC COVID-19 test kits purportedly sent to S.H. by four separate companies, including State Scientific.

### iv. Medicare beneficiary E.C.

30. On June 15, 2023, investigators interviewed E.C. Between April and May 2023, E.C. received two total packages containing COVID-19 test kits. Both packages were from laboratory companies other than State Scientific. E.C. had not requested any OTC COVID-19 tests, and E.C. did not receive any OTC COVID-19 tests from State Scientific. According to Medicare data, Medicare was billed for OTC COVID-19 test kits purportedly sent to E.C. by five separate companies, including State Scientific. In each instance, the requesting provider was reimbursed $94.08 by Medicare.

      v. Medicare beneficiary F.D.

  31. On June 15, 2023, investigators interviewed Medicare beneficiary F.D. F.D. did not request or receive any OTC COVID-19 test kits in the mail. Despite that fact, F.D. noticed five separate requests for payment for OTC COVID-19 tests kits on his/her Medicare Explanation of Benefits, from State Scientific and four other laboratory companies. In each instance, the request was for CPT code K1034 for eight tests and was reimbursed by Medicare to the biller for $94.08.

  **D.** **Billing for Deceased Beneficiaries**

  32. An analysis of State Scientific's billing records by Medicare revealed that State Scientific billed for purported dates of service from April 6, 2023, through May 6, 2023, for approximately 70 deceased beneficiaries. The following chart provides examples of individuals with purported dates of service after their death billed by State Scientific:

| Beneficiary | Date of Birth | Date of Death | Date of Service | Amt. Billed | Amt. Paid |
|---|---|---|---|---|---|
| R.D. | 08/07/1953 | 06/03/2021 | 05/05/2023 | $200 | $94.08 |
| L.T. | 03/11/1948 | 11/22/2022 | 04/13/2023 | $200 | $0 |
| J.B. | 12/24/1936 | 12/13/2022 | 04/06/2023 | $200 | $0 |
| R.B. | 11/01/1935 | 02/19/2023 | 05/04/2023 | $200 | $0 |

  33. In total, State Scientific attempted to bill Medicare $14,000 for 70 instances of purportedly supplying COVID-19 test kits after a beneficiary's date of death. Medicare only paid for two of these claims for a total of approximately $188.16, as the Medicare system identified most individuals whose dates of death preceded the purported dates of service and denied the claims.

11

34. Medicare providers who repeatedly bill for services purportedly provided to beneficiaries after the beneficiaries' dates of death often are using Medicare beneficiary information that has been purchased or unlawfully transferred, rather than collected in the ordinary course of their provision of bona fide medical services to beneficiaries.

### E. Lack of Identifiable Business Expenses

35. Based upon review of bank records for State Scientific, **Defendant Account**, and other financial records, there is no indication that State Scientific had business expenses that one would expect of a business operating as a large scale provider of COVID-19 test kits to Medicare beneficiaries. For instance, there were no identifiable expenditures for items such as payroll (or to a payroll service provider); for COVID-19 test kit inventory; for shipping, postage, or packaging; or payments to Medicare billers, from **Defendant Account** or from any other financial account that the government has identified associated with State Scientific.

### F. Tracing the Funds Sought for Forfeiture

36. According to Bank of America records, **Defendant Account** was opened on or about August 12, 2021.

37. The funds sought for forfeiture in **Defendant Account** were deposited by Medicare and represent the proceeds of billing Medicare fraudulently for purported delivery of OTC COVID-19 test kits.

38. **Defendant Account** was subject of a seizure warrant issued by a magistrate judge in the Northern District of Illinois on June 21, 2023.

**G.     Flight of State Scientific Owner**

39.    As noted previously, Ya was identified as the Registered Agent and Manager of State Scientific, according to Illinois Secretary of State records from February 29, 2024. Through the investigation, investigators determined that Ya left the United States after purchasing a ticket on Qatar Airlines to Doha, Qatar, departing the United States from Houston, Texas on April 12,2023. To date, Ya has not returned to the United States.

## Conclusion

52.    For the reasons stated herein and in the attached affidavit, incorporated by reference herein, the foregoing defendant property was involved in a transaction or attempted transaction in violation of section 1957, or is property traceable to such property, and therefore is subject to forfeiture and condemnation pursuant to Title 18, United States Code, Section 981(a)(1)(A). Furthermore, the foregoing defendant property was derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341, 1343, 1347, 1349, or 1957, and therefore is subject to forfeiture and condemnation pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 18, United States Code, Section 984.

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the defendant property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the defendant property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the defendant property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney
    Northern District of Illinois

By:   s/ *Victor B. Yanz*
    VICTOR B. YANZ
    Trial Attorney
    Fraud Section
    U.S. Department of Justice
    219 South Dearborn., Rm. 500
    Chicago, Illinois 60604
    (202) 957-2993

Dated:    March 12, 2024